IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| Nelson S. Chase, Esq.,                                        )<br><br>                          Plaintiff,            )<br><br>          vs.                                                            )<br><br>LOP Capital, LLC, Strategic Lending<br>Solutions, LLC, Brian Knight, and<br>Michael Loprieno,                                          )<br><br>                          Defendants.        )<br>_____) | Civil Action No. 2:13-162-MGL-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the plaintiff's motion for partial summary judgment as to the defendants' counterclaims (doc. 89). The plaintiff is an attorney proceeding *pro se*.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) DSC, all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

A hearing on this motion and other motions was held before the undersigned on February 28, 2014.  The court has considered the briefs and arguments presented by counsel and makes the following recommendation to the district court.

## FACTS PRESENTED

Defendant LOP Capital, LLC ("LOP") is engaged in the commercial lending business.  In 2008, LOP agreed to provide bridge financing for a Georgia real estate development.  As additional collateral for the Georgia loan, LOP obtained a security interest in property located in Spartanburg County, South Carolina (the "Spartanburg Property").  The instrument by which LOP obtained a security interest in the Spartanburg Property was drafted for LOP by now-disbarred South Carolina attorney F. Scott Pfeiffer.

After the developer defaulted, LOP foreclosed on the Georgia property.  In April 2009, following a sheriff's sale of the Georgia real estate, a Georgia court awarded

LOP a deficiency judgment in the original principal amount of approximately $163,944.99. Defendant Michael Loprieno, the principal of LOP, then sought South Carolina counsel to enforce LOP's lien against the Spartanburg Property.  Mr. Loprieno first learned of the plaintiff through defendant Brian Knight, the principal of defendant Strategic Lending Solutions, LLC ("Strategic").   The plaintiff had previously represented Mr. Knight and Strategic in an unrelated matter.  Consequently, Mr. Loprieno contacted the plaintiff in April 2009 (doc. 96-1, Chase dep. 137, 169).

The plaintiff ultimately filed a total of three lawsuits in South Carolina on behalf of one or more of the defendants.  All of the litigation in which the plaintiff acted as counsel for the defendants arose out of the same operative facts and shared the common objective of obtaining satisfaction of LOP's Georgia deficiency judgment.

According to the plaintiff, the defendants paid him $25,000.00 in early 2009 when he first began his representation of them (doc. 96-1, Chase dep. 136-38).   On December 30, 2009, the plaintiff instituted a foreclosure action on behalf of LOP ( the "2009 Civil Action") in the Spartanburg County Court of Common Pleas (C.A. No. 2009-CP-42-6973).  The purpose of this action was to satisfy LOP's Georgia deficiency judgment out of the Spartanburg Property. The value of the Spartanburg Property was more than sufficient to cover the entire deficiency owed to LOP (doc. 96-1, Chase dep. 260-61).  However, on October 31, 2011, the master-in-equity dismissed the 2009 Civil Action *without prejudice*, citing the plaintiff's failure to respond to counterclaims and his failure to join defendant Strategic as a necessary party[1] (doc. 96-5, dismissal order; doc. 96-6, hearing trans.).

The plaintiff did not send an invoice or statement to the defendants for his fees and costs in 2009 or 2010 (doc. 96-1, Chase dep. 138).   According to defendant Loprieno, he understood that the plaintiff had charged them a flat fee that would take the matter to a final resolution.  When he received a bill from the plaintiff in February 2011 that contained an hourly fee and many billable hours, defendant Loprieno states that he was

---

[1]LOP had conveyed a portion of its interest in the security instrument underlying the case to Strategic (doc. 96-5, dismissal order at 2; doc. 96-2, Loprieno aff. ¶ 3).

2

shocked and disturbed (doc. 96-2, Loprieno aff. ¶ 4). The bill was for the period from August 2008 through February 4, 2011, and totaled $81,526.37, with a balance due of $41,526.37 (doc. 96-3, bill for period 8/2008 to 2/2011).

On November 8, 2011, soon after the 2009 Civil Action was dismissed, the plaintiff filed a nearly identical[2] action (the "2011 Civil Action") on behalf of LOP and Strategic (C.A. No. 2011-CP-42-4876). At his deposition, the plaintiff described the 2011 Civil Action as "the exact same case" (doc. 96-1, Chase dep. 446-47). The defendants claim that the plaintiff took this course of action without first discussing its advantages and disadvantages with them and without obtaining their informed consent (doc. 96-2, Loprieno aff. ¶ 5).

On January 23, 2012, the plaintiff filed an appeal of the 2009 Civil Action to the South Carolina Court of Appeals, claiming that the master-in-equity had erred in dismissing the case. The plaintiff agreed to represent LOP in the appeal of the 2009 Civil Action at no additional charge (doc. 96-8, email of July 2, 2012; doc. 96-1, Chase dep. 267). On February 13, 2013, after he filed the instant case against the defendants, the plaintiff presented oral argument on behalf LOP in the appeal of the 2009 Civil Action. On June 19, 2013, the South Carolina Court of Appeals dismissed the appeal in the 2009 Civil Action based on the opposing party's argument that the plaintiff's decision to file the 2011 Civil Action rendered the appeal moot (doc. 89-7, dismissal order).

The 2011 Civil Action was removed to federal court on December 6, 2011 (C.A. No. 7:11-3312-JMC).[3] The plaintiff filed a motion to remand the case to state court, which was granted on June 27, 2012. According to the defendants, in July 2012, they

---

[2] The 2011 Civil Action differed only in that it included a fifth cause of action for fraud (doc. 89, m.s.j. at 2).

[3] The plaintiff also represented the defendants in a companion case filed against them in federal court by Capital Investment Funding, LLC and Cosimo, LLC contemporaneously with the removal of the 2011 Civil Action (C.A. No. 6:11-3321-MGL). That case was voluntarily dismissed by Capital Investment Funding, LLC and Cosimo, LLC on July 30, 2013, pursuant to a settlement of all litigation reached with the defendants.

3

terminated the plaintiff as counsel in the 2011 Civil Action. On July 20, 2012, the plaintiff

filed a motion for attorney fees, costs, and expenses as attorney for LOP and Strategic in

the federal case. The district court granted the motion in part on May 7, 2013, awarding

fees directly related to LOP and Strategic's efforts to have the matter remanded to state

court in the amount of $11,812.50 in attorney fees and $110 in administrative fees (C.A. No.

7:11-3312-JMC, doc. 44).

Approximately fourteen months after filing the 2009 Civil Action, and while it

was still pending, the plaintiff represented LOP in a related legal malpractice action against

now-disbarred attorney F. Scott Pfeiffer ( the "Pfeiffer Matter"). The complaint in the Pfeiffer

Matter was filed in the Greenville County Court of Common Pleas on March 17, 2011 (C.A.

No. 2011-CP-23-1909). The Pfeiffer Matter arose primarily out of defects in the document

drafted by Mr. Pfeiffer that was supposed to grant LOP a first-position security interest in

the Spartanburg Property. The Pfeiffer Matter was never decided on the merits. On March

8, 2012, the court dismissed both the legal malpractice and the breach of fiduciary duty

claims based on the plaintiff's failure to submit the statutorily required[4] affidavit of merit

along with the complaint (doc. 96-7, dismissal order). While this dismissal was facially

---

[4]South Carolina Code Annotated § 15-36-100 provides, in pertinent part:

**Complaint in actions for damages alleging professional negligence; contemporaneous affidavit of expert specifying negligent act or omission.**

***

(B) Except as provided in Section 15-79-125, in an action for damages alleging professional negligence against a professional licensed by or registered with the State of South Carolina and listed in subsection (G) . . . , the plaintiff must file as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit.

(C)(1) . . . If an affidavit is not filed within the period specified in this subsection or as extended by the trial court and the defendant against whom an affidavit should have been filed alleges, by motion to dismiss filed contemporaneously with its initial responsive pleading that the plaintiff has failed to file the requisite affidavit, the complaint is subject to dismissal for failure to state a claim. . . .

S.C. Code Ann. § 15-36-100.

*without prejudice*, it operated as a dismissal *with prejudice* because the three year statute of limitations had run prior to the entry of the order. *See* S.C. Code Ann. § 15-3-530. The plaintiff did not file a motion to reconsider this ruling and did not appeal this order. LOP was left with claims for fraud, constructive fraud, negligent misrepresentation, and civil conspiracy (doc. 106-8, Pfeiffer comp.). According to the plaintiff, after he withdrew as counsel in the case, LOP agreed to a voluntary dismissal *with prejudice* of the remaining claims (doc. 106, pl. reply at 5).

According to the affidavit of defendant Loprieno, the defendants have paid the plaintiff a total of $67,199.56 for his representation of them in the lawsuits described above (doc. 96-2, Loprieno aff. ¶ 10).

In June 2012, the plaintiff filed in the Spartanburg County Court of Common Pleas Attorney's Charging Liens on the settlements or judgments in the 2009 and 2011 Civil Actions (doc. 89-3, Attorney's Charging Liens). On December 17, 2012, the plaintiff filed the instant action against the defendants in state court, and it was removed to federal court by the defendants on January 15, 2013, based upon diversity jurisdiction. In his second amended complaint, the plaintiff alleges claims for breach of written contract, breach of oral contract, fraud, fraudulent misrepresentation and conspiracy to commit fraud, and *quantum meruit* (doc. 48, 2nd amended comp.). He alleges that the defendants owe him $272,431.31 for his representation of them in the 2009 Civil Case and appeal, the 2011 Civil Case, the Pfeiffer Matter, and the federal cases (*id.* at 11; doc. 48-8, summary of attorney's costs and services rendered).

On May 29, 2013, during the pendency of the instant lawsuit, the plaintiff sent a letter to opposing counsel in the 2009 and 2011 Civil Actions and to the attorney representing the defendants in negotiating a settlement of those actions, the federal lawsuit, and related litigation. In that letter, the plaintiff stated that he understood that the parties to the lawsuits were negotiating a settlement, and he wanted "to remind all counsel that [he had] an attorney's charging lien that [had] been perfected on both cases." The plaintiff noted that the federal court had recently entered an order granting a motion for attorney

5

fees for improper removal of the 2011 Civil Action. He further stated, "The plaintiff [LOP and Strategic] should not benefit from the federal court award without satisfying my attorney charging lien. Please make arrangements to immediately satisfy that charging lien at which point the plaintiffs [LOP and Strategic] are free to satisfy any settlement with the defendants as they choose" (doc. 96-9, 5/29/13 letter).

On August 2, 2013, the plaintiff sent a letter to The Honorable J. Michelle Childs, United States District Judge, regarding Judge Childs' partial grant of attorney fees for improper removal of the 2011 Civil Action to federal court (C.A. No. 7:11-3312-JMC). The plaintiff noted that "his client acknowledges that he has not paid the costs and attorney fees to the attorney which is the subject matter of [the court's] order. Further[,] the client has expressed its intent to use the court ordered attorney fees and costs to settle a separate claim made by the Defendant Cosimo and therefore attain a personal benefit unrelated to [the court's] award, leaving the reward to me unsatisfied." The plaintiff requested amendment of the order to specify that the attorney fees should go directly to him rather than his client. The plaintiff did not disclose to Judge Childs the pendency of the instant action or that he was no longer authorized to act as counsel for the defendants (doc. 96-10, 8/2/13 letter).

On August 30, 2013, the plaintiff filed a motion, styled as arising under Federal Rule of Civil Procedure 60(b), in the federal case that had been closed when the 2011 Civil Action was remanded to state court (C.A. No. 7:11-3312-JMC). In the motion, the plaintiff noted that he had been told by his clients, LOP and Strategic, that they had entered into a confidential settlement agreement with opposing parties as to all matters pending in the various courts, which included a waiver of the court's May 7, 2013, order partially granting the motion for attorney fees and dismissal of the plaintiff's Attorney's Charging Lien. The plaintiff alleged that LOP and Strategic "acted fraudulently" by entering into the settlement agreement. He asked that the court enter a declaratory judgment that his rights were violated and reopen the federal case to compel the parties to pay him the attorney fees and costs awarded in the May 7, 2013, order (doc. 96-11, Rule 60 motion).

6

On October 14, 2013, the defendants filed their answer to the plaintiff's second amended complaint in the instant case, alleging counterclaims against the plaintiff for legal malpractice, breach of contract, intentional interference with prospective contractual relations, tortious interference with existing contractual relations, and unjust enrichment (doc. 73).

## APPLICABLE LAW AND ANALYSIS

The plaintiff has moved for summary judgment on the defendants' counterclaims. Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the party's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the

7

suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### Legal Malpractice

To establish a legal malpractice claim in South Carolina, a party "must satisfy the following four elements: (1) the existence of an attorney-client relationship; (2) breach of duty by the attorney; (3) damage to the client; and (4) proximate causation of client's damage by the breach." *Holy Loch Distrib., Inc. v. R.L. Hitchcock*, 531 S.E.2d 282, 285 (S.C. 2000) (citing *Smith v. Haynsworth, Marion, McKay & Guerard*, 472 S.E.2d 612 (1996)). The correct standard of care is "the degree of skill, care, knowledge, and judgment usually possessed and exercised by members of the profession." *Id.*

The defendants have retained the services of Michael Virzi, Esq., as an expert witness in this matter. Mr. Virzi states in his affidavit that, based on his experience, education, training, knowledge of the standard of care for lawyers, and on his review of the pertinent documents in this case, it is his opinion that the plaintiff engaged in negligent acts and omissions in his representation of the defendants and that his conduct fell below the standard of care, skill, knowledge, and judgment usually possessed and exercised by members of the legal profession in South Carolina (doc. 73-9, Virzi aff. ¶ 5).

Specifically, he opines that the plaintiff committed the following negligent acts and omissions:

> 1) He advised one or more of the defendants that the Pfeiffer Matter could not be filed until the foreclosure action was concluded;
>
> 2) He failed to respond to counterclaims in the 2009 Civil Action, and, as a result, the master-in-equity dismissed the complaint;
>
> 3) He failed to name Strategic as a plaintiff in the 2009 Civil Action, which was an alternate basis for the master-in-equity's dismissal;
>
> 4) He failed to include the affidavit required by state law when he filed the legal malpractice complaint in the Pfeiffer Matter,

8

which resulted in the court dismissing the legal malpractice and breach of fiduciary duty claims;

5) He failed to keep the defendants informed about the status of their legal matters including: failing to inform the defendants that he had re-filed the dismissed foreclosure action and added a new cause of action (the 2011 Civil Action); failing to inform the defendants that he filed an answer on their behalf in a lawsuit filed against them; and failing to convey settlement offers from opposing parties to the defendants;

6) He failed to present the defendants with bills or records of time spent and fees earned until long after his representation of the defendants had commenced, and the bills were based on billing methods to which the defendants had not agreed; and

7) He took a position adverse to the defendants in the very matters in which he had represented them when, in May 2013, he threatened to sue the adverse parties if they settled with the defendants without protecting the plaintiff's lien.

(*Id.* ¶¶ 6-11).

The plaintiff claims that it was defendant Loprieno's decision not to hire an expert in the Pfeiffer Matter, and he has submitted two emails in which defendant Loprieno states that it was his decision not to hire an expert in that case (doc. 89-5, Loprieno emails). However, defendant Loprieno states in his affidavit that the plaintiff never informed him or the other defendants that an expert's affidavit was necessary in South Carolina in order to file a claim for attorney malpractice (doc. 96-2, Loprieno aff. ¶ 7). The defendants cite an email dated five days prior to the plaintiff filing the complaint in the Pfeiffer Matter in which the plaintiff stated, "*If* an expert witness is called, which I *anticipate*, you will be responsible for that cost as well" (doc. 96-13, Chase email), which implies that the plaintiff regarded expert testimony as something the defendants could do without, at least for the immediate future. The defendants have also presented evidence that the plaintiff advised them that the Pfeiffer Matter could not be filed until the issues in the 2009 Civil Action were resolved, and thus they waited to file the complaint in the Pfeiffer Matter until just before the statute of limitations was about to expire (doc. 96-2, Loprieno aff. ¶¶ 6-7). The defendants argue that this was a mischaracterization of South Carolina law, and, as a result of the plaintiff's

9

misadvice, the malpractice and breach of fiduciary claims that were dismissed could not be refiled as the statute of limitations had run (doc. 96, resp. to m.s.j. at 13).

The plaintiff argues that the dismissal of the 2009 Civil Action for failure to add a necessary party and failure to answer counterclaims was in error, and thus he did not breach any duty to his clients (doc. 89, m.s.j. at 7-9).  While the defendants concede that the master-in-equity's dismissal of the action was unduly harsh and probably erroneous, they argue that an attorney of ordinary prudence would have filed a responsive pleading to the counterclaims as a precautionary measure and would have named Strategic as a party or provided an explanation for not doing so (doc. 96, resp. to m.s.j. at 13-15).  Moreover, the plaintiff failed to address the alleged legal errors in the master-in-equity's order of dismissal within the ten-day period provided in South Carolina Rule of Civil Procedure 59(e) (*see* doc. 96-14, original Rule 59(e) motion).

The defendants also contend that the plaintiff filed the 2011 Civil Action without their consent (doc. 96-2, Loprieno aff. ¶ 5).  Opposing counsel then used the pendency of the 2011 Civil Action as an argument for dismissal of the appeal of the 2009 Civil Action.  The defendants contend that if the plaintiff had explained the advantages and disadvantages of filing the 2011 Civil Action so soon after the dismissal of the 2009 Civil Action, they likely would not have been faced with the cascade of expensive litigation that followed the filing of that action (doc. 96, resp. to m.s.j at 17).

The defendants further argue that the plaintiff's habitual violation of the Rules of Professional Conduct provide further evidence of his professional negligence (*id.* at 17-18).  While the Rules of Professional Conduct do not, in and of themselves, give rise to a cause of action, they are nevertheless "constitutive and descriptive in that they define a lawyer's professional role." *See* Rule 407, S.C.A.C.R. When an attorney violates rules specifically designed to protect his client, those rules are "relevant and admissible in assessing the legal duty of an attorney in a malpractice action."  *Smith,* 472 S.E.2d at 614. In addition to other rule violations, the defendants contend that the plaintiff failed to explain the basis for his billing, or even to present a written fee agreement until two years after the

10

representation had commenced, and he also failed to maintain records of his time for billing purposes and failed to maintain unearned client funds in a trust account (doc. 96, resp. to m.s.j. at 18 (citing Rule 1.5, S.C.R. Prof. Conduct); *see* doc. 96-2, Loprieno aff. ¶ 4; doc. 96-3, bill for period 8/2008 to 2/2011).

Based upon the foregoing, the undersigned finds that the defendants have raised issues of material fact as to whether the plaintiff breached his duty to them. Furthermore, the undersigned finds that the defendants have raised issues of material fact as to whether the plaintiff's alleged breach of his duty caused them harm. Specifically, the defendants have presented evidence that the plaintiff's decision to file the 2011 Civil Action without consulting them resulted in the dismissal of their appeal of the 2009 Civil Action. The plaintiff asserts in his motion for summary judgment that his decision to file the 2011 Civil Action was motivated by the need (1) to prevent collateral from being alienated and (2) to preserve favorable rulings (doc. 89, m.s.j. at 9-10). However, the defendants have presented evidence that the decision served neither purpose and actually thwarted the latter purpose. They argue that, given the pending appeal of the 2009 Civil Action, title to the Spartanburg Property was impaired, and the collateral was in no real danger of alienation. Furthermore, the filing of the 2011 Civil Action resulted in the dismissal of the appeal of the 2009 Civil Action as moot, which cost the defendants the favorable rulings they had obtained in the 2009 Civil Action, along with legal fees associated with filing another lawsuit. With regard to the Pfeiffer Matter, while the malpractice and breach of fiduciary duty claims were dismissed *without prejudice*, they could not be refiled with the proper supporting affidavit because they were time-barred. Further, the defendants argue that the remaining claims (fraud, negligent misrepresentation, constructive fraud, and civil conspiracy) were more difficult to establish than the malpractice and breach of fiduciary duty claims, as they included elements such as intent or the complicity of actors other than Mr. Pfeiffer (resp. m.s.j. at 22-23) (citing *Vaught v. Waites*, 387 S.E.2d 91, 95 (S.C. Ct. App. 1989) (more than one actor required to prove conspiracy); *Quail Hill, LLC, v. County of Richland*, 692 S.E.2d 499, 508 (S.C. 2010) (greater number of elements required to prove

negligent misrepresentation and added difficulty of establishing duty apart from attorney-client relationship); *Armstrong v. Collins*, 621 S.E.2d 368, 375 (S.C. Ct. App. 2005) (greater number of elements required to prove fraud (nine elements including intent) and constructive fraud (eight elements); no right to rely in constructive fraud case absent fiduciary relationship)).

Based upon the foregoing, the undersigned finds that genuine issues of material fact exist with regard to the defendants' counterclaim for attorney malpractice. Accordingly, the motion for summary judgment should be denied as to this counterclaim.

**Breach of Contract**

In order to recover on a claim for breach of contract, a party must prove the contract, its breach, and the damages caused by such breach. *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962) (citation omitted). The plaintiff and the defendants generally disagree concerning the number of agreements entered into between them as well as the scope and terms of those agreements. The parties agree, however, that they entered into at least one contract. In an agreement dated April 25, 2011, the plaintiff and defendants agreed that the plaintiff would represent the defendants in the 2009 Civil Matter; the plaintiff would defer payment of the fee of $25,426.00, as of March 1, 2011; in the event of the sale of the Spartanburg Property, the plaintiff would receive $10,000.00 from the defendants' share of the net proceeds; the balance of the fee would be paid when the remaining 30 acres were sold or six months after the date title of the Spartanburg Property was transferred to LOP, whichever occurred first; the plaintiff would have an Attorney's Charging Lien on the Spartanburg Property until the fees and costs were paid; and the plaintiff would bill the defendants monthly for his services and costs incurred after March 1, 2011 (*see* doc. 106-1, fee agreement). As discussed above with regard to the attorney malpractice counterclaim, the undersigned finds that the defendants have raised issues of material fact as to whether the plaintiff breached his duty to the defendants in representing them in the 2009 Civil Action. Furthermore, the defendants have presented evidence of damages caused by such breach, including amounts paid to the plaintiff directly and other

12

fees incurred in connection with the 2009 Civil Action and the 2011 Civil Action, which was virtually identical to the 2009 Civil Action. The defendants further argue that the basis for determining their loss as a result of the unnecessarily dismissed actions is the value of the deficiency judgment the defendants were attempting to enforce, in the original principal amount of approximately $163,944.99 (doc. 96, resp. m.s.j. at 24).

Based upon the foregoing and viewing the evidence in the required light most favorable to the defendants, the undersigned finds that the defendants have raised issues of material fact, and thus summary judgment on the breach of contract counterclaim should be denied.

### *Intentional Interference with Prospective Contractual Relations*

"To recover for intentional interference with prospective contractual relations, the plaintiff must prove that the defendant intentionally interfered with the plaintiff's potential contractual relations for an improper purpose or by improper methods and that the interference caused injury to the plaintiff." *Santoro v. Schulthess*, 681 S.E.2d 897, 903 (S.C. Ct. App. 2009) (citing *Crandall Corp. v. Navistar Int'l Transp. Corp.*, 395 S.E.2d 179, 180 (S.C. 1990)).

The plaintiff argues that because the Attorney's Charging Liens were filed in June 2012, a year prior to the settlement discussions between the defendants and the opposing parties in their lawsuits, and he had no knowledge of the parties' intent to enter into a settlement of all the cases at that time, he could not have interfered with the defendants' prospective contractual relationship (doc. 89, m.s.j. at 19). However, on May 29, 2013, during the pendency of the instant lawsuit and prior to the finalization of the defendants' settlement with their opposing parties at the end of July 2013 (*see* doc. 96-1, Chase dep. 277), the plaintiff sent a letter to opposing counsel in the 2009 and 2011 Civil Actions and to the attorney representing the defendants in negotiating a settlement of those actions, the federal lawsuit, and related litigation. In that letter, the plaintiff stated that he understood that the parties were negotiating a settlement, and he wanted "to remind all counsel that [he had] an attorney's charging lien that [had] been perfected on both cases."

13

The plaintiff noted that the federal court had recently entered an order granting a motion for attorney fees for improper removal of the 2011 Civil Action. He further stated, "The plaintiff [LOP and Strategic] should not benefit from the federal court award without satisfying my attorney charging lien. Please make arrangements to immediately satisfy that charging lien at which point the plaintiffs [LOP and Strategic] are free to satisfy any settlement with the defendants as they choose" (doc. 96-9, 5/29/13 letter).

The defendants argue that the plaintiff's conduct was improper for several reasons. First, the charging lien claimed by the plaintiff was much broader than the one authorized by his clients as part of the April 25, 2011, fee agreement (*see* doc. 106-1, fee agreement). South Carolina recognizes an equitable attorney's lien at common law only to the extent of costs and disbursements, not attorney fees. *Eleazer v. Hardaway Concrete Co., Inc.*, 315 S.E.2d 174, 177 (S.C. Ct. App. 1984). A lien for attorney fees arises only from the express agreement of the parties. *Id. See In re Copeland*, C.A. No. 10-08956-DD, 2011 WL 2460852, at *4 (Bankr. D.S.C. June 15, 2011) (stating that an attorney's charging lien for payment of attorney fees can only be created by express agreement between the attorney and client). The agreement between the parties was that the plaintiff would have an Attorney's Charging Lien on the Spartanburg Property until the fees and costs were paid as provided in the April 25, 2011, fee agreement for the 2009 Civil Action (*see* doc. 106-1, fee agreement ¶ 5). Second, the whole premise of allowing an attorney's charging lien is "'the natural equity that the plaintiff should not be allowed to appropriate the whole of a judgment in his favor without paying thereout for the services of his attorney in obtaining such judgment.'" *Eleazer*, 315 S.E.2d at 177 (quoting 7A C.J.S. Attorney & Client § 359 at 713-14 (1980)). The defendants argue that the settlement ultimately reached was a net loss to them, and therefore there was no lien for the plaintiff to enforce (doc. 96, resp. m.s.j. at 28-29). The defendants further contend the plaintiff's active interference with settlement discussions resulted in delays in finalizing the settlement, required them to indemnify the adverse parties against the plaintiff's continued interference with the settlement agreement,

14

and required them to pay more money to settle the cases (doc. 96-2, Loprieno aff. ¶ 9; resp. m.s.j. at 29).

Based upon the foregoing, the undersigned finds that issues of material fact remain, and thus summary judgment should be denied as to this counterclaim.

### Tortious Interference with Existing Contractual Relations

"To establish a cause of action for tortious interference with contractual relations, a plaintiff must show: 1) the existence of a contract; 2) knowledge of the contract; 3) intentional procurement of its breach; 4) the absence of justification; and 5) resulting damages." *Eldeco, Inc. v. Charleston County School Dist.*, 642 S.E.2d 726, 731 (S.C. 2007) (citing *Kinard v. Crosby*, 433 S.E.2d 835, 837 (1993)).

The defendants argue that this counterclaim arises from the plaintiff's attempts to undo the binding settlement agreement the defendants entered with the adverse parties to their multiple cases. Specifically, the defendants point to the August 2, 2013, letter the plaintiff wrote to Judge Childs, who had partially granted the defendants' motion for attorney fees for improper removal of the 2011 Civil Action to federal court (C.A. No. 7:11-3312-JMC). The plaintiff noted int the letter that "his client acknowledges that he has <u>not</u> paid the costs and attorney fees to the attorney which is the subject matter of [the court's] order. Further[,] the client has expressed its intent to use the court ordered attorney fees and costs to settle a separate claim made by the Defendant Cosimo and therefore attain a personal benefit unrelated to [the court's] award, leaving the reward to me unsatisfied." The plaintiff requested amendment of the order to specify that the attorney fees should go directly to him rather than his client. The plaintiff did not disclose to Judge Childs the pendency of the instant action or that he was no longer authorized to act as counsel for the defendants (doc. 96-10, 8/2/13 letter).

The defendants also point to a motion the plaintiff filed on August 30, 2013, which was styled as arising under Federal Rule of Civil Procedure 60(b), in the federal case before Judge Childs that had been closed when the 2011 Civil Action was remanded to state court (C.A. No. 7:11-3312-JMC). In the motion, the plaintiff noted that he had been

15

told by his clients, defendants LOP and Strategic, that they had entered into a confidential settlement agreement with opposing parties as to all matters pending in the various courts, which included dismissal of the plaintiff's Attorney Charging Lien and a waiver of the court's May 7, 2013, order partially granting the motion for attorney fees.  The plaintiff alleged that LOP and Strategic "acted fraudulently" by entering into the settlement agreement.   He asked that the court enter a declaratory judgment that his rights were violated and reopen the federal case to compel the parties to pay him the attorney fees and costs awarded in the May 7, 2013, order (doc. 96-11, Rule 60 motion).   The plaintiff later amended the motion, which is currently pending before Judge Childs.  A hearing on the matter has been scheduled for April 16, 2014 (*see* C.A. No. 7:11-3312-JMC, doc. 59).

The plaintiff argues that the defendants' counterclaim fails because he was an intended third-party beneficiary of the court's May 7, 2013, order partially granting the motion for attorney fees, and thus he had enforceable contract rights with regard to the May 7th order (doc. 89, m.s.j. at 19-21). *See Touchberry v. City of Florence*, 367 S.E.2d 149, 150 (S.C. 1988) (stating that the presumption that a contract is not enforceable by third party may be overcome by showing he was intended to be the direct beneficiary of the contract). However, the defendants argue that there is no evidence that they, opposing counsel, or the judge intended to provide a direct benefit to the plaintiff, and, rather, the award was intended for the benefit of the defendants to offset their costs in having to defend against the improper removal of the 2011 Civil Action to federal court (doc. 96, resp. m.s.j. at 31). *See Bob Hammond Constr. Co., Inc. v. Banks Constr. Co.*, 440 S.E.2d 890, 891 (S.C. Ct. App. 1994) (stating that without evidence that the parties to a contract intended to create a direct, rather than incidental or consequential, benefit to a third party, the third party is not entitled to enforce the contract)).

Given the foregoing issues of material fact, the undersigned finds that summary judgment on this counterclaim is inappropriate at this time.

16

***Unjust Enrichment***

   The defendants have also pled the theory of unjust enrichment as a basis for recovery of the monies paid to the plaintiff in the event that their contract counterclaim is for any reason denied. "The terms 'restitution' and 'unjust enrichment' are modern designations for the older doctrine of quasi-contracts. Unjust enrichment is usually a prerequisite for enforcement of the doctrine of restitution; if there is no basis for unjust enrichment, there is no basis for restitution." *Ellis v. Smith Grading and Paving, Inc.*, 366 S.E.2d 12, 14-15 (S.C. Ct. App. 1988) (citations omitted). The elements of such a claim are: "(1) a benefit conferred upon the [plaintiff] by the [defendants]; (2) realization of that benefit by the [plaintiff]; and (3) retention by [plaintiff] of the benefit under conditions that make it inequitable for him to retain it without paying its value." *Id.* at 15.

   The defendants argue that they paid the plaintiff over $60,000.00 in attorney fees and costs with the expectation that he would competently perform a task on their behalf, he failed to accomplish the task and complicated their ability to pick up the pieces after he failed, and it would therefore be inequitable for him to retain the benefit (doc. 96, resp. m.s.j. at 25-26). Furthermore, as noted above, the parties disagree as to the number of fee agreements they entered into, as well as the scope and terms of those agreements. *See* Restatement (Third) of Restitution and Unjust Enrichment § 2(2) (2011) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment."). Accordingly, the undersigned finds that summary judgment should also be denied on this counterclaim as issues of material fact remain.

## CONCLUSION AND RECOMMENDATION

   Wherefore, based upon the foregoing, the plaintiff's motion for partial summary judgment on the defendants' counterclaims (doc. 89) should be denied.

s/Kevin F. McDonald
United States Magistrate Judge

April 2, 2014
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).