IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| Nelson S. Chase, Esq., ) | Civil Action No. 2:13-162-BHH-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| LOP Capital, LLC, Strategic Lending ) | |
| Solutions, LLC, Brian Knight, and ) | |
| Michael Loprieno, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the defendants' motion for partial summary judgment (doc. 112). The plaintiff is an attorney proceeding *pro se*. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civ. Rule 73.02(B)(2)(e)(D.S.C.), all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

Defendant LOP Capital, LLC ("LOP") is engaged in the commercial lending business.  In 2008, LOP agreed to provide bridge financing for a Georgia real estate development.  As additional collateral for the Georgia loan, LOP obtained a security interest in property located in Spartanburg County, South Carolina (the "Spartanburg Property").  The instrument by which LOP obtained a security interest in the Spartanburg Property was drafted for LOP by now-disbarred South Carolina attorney F. Scott Pfeiffer.

After the developer defaulted, LOP foreclosed on the Georgia property.  In April 2009, following a sheriff's sale of the Georgia real estate, a Georgia court awarded LOP a deficiency judgment in the original principal amount of approximately $163,944.99.  Defendant Michael Loprieno, the principal of LOP, then sought South Carolina counsel to enforce LOP's lien against the Spartanburg Property.  Mr. Loprieno first learned of the

plaintiff through defendant Brian Knight, the principal of defendant Strategic Lending Solutions, LLC ("Strategic"). Mr. Loprieno contacted the plaintiff in April 2009 (doc. 112-1, Chase dep. 167-68).

The plaintiff did not have a written fee agreement with the defendants at the start of his representation (*id.* 205). According to the plaintiff, the defendants paid him $25,000.00 in early 2009 (*id.* 135-36). On December 30, 2009, the plaintiff instituted a foreclosure action on behalf of LOP ( the "2009 Civil Action") in the Spartanburg County Court of Common Pleas (C.A. No. 2009-CP-42-6973). The plaintiff did not send an invoice or statement to the defendants for his fees and costs in 2009 or 2010 (doc. 112-1, Chase dep. 141-42). According to defendant Loprieno, he understood that the plaintiff had charged them a flat fee that would take the matter to a final resolution. When he received a bill from the plaintiff in February 2011 that contained an hourly fee and many billable hours, defendant Loprieno states that he was shocked and disturbed (doc. 112-3, Loprieno aff. ¶ 4). The bill was for the period from August 2008 through February 4, 2011, and totaled $81,526.37, with payments of $40,000.00 and a balance due of $41,526.37 (doc. 112-5, bill for period 8/2008 to 2/2011). The plaintiff has acknowledged that there were mistakes in the bill (doc. 112-2, Chase dep. 293-94). The defendants have submitted evidence that they have paid the plaintiff over $70,000.00 (doc. 112-3, Loprieno aff. ¶ 10; doc. 119-1, 2/26/10 check to plaintiff for $12,500.00).[1]

In March 2011, the plaintiff filed an action for legal malpractice in the Greenville County Court of Common Pleas on behalf of LOP against now-disbarred attorney F. Scott Pfeiffer ( the "Pfeiffer Matter") (C.A. No. 2011-CP-23-1909).

On April 25, 2011, the plaintiff and LOP entered a fee agreement regarding the 2009 Civil Action. This is the only agreement that was ever reduced to writing between

---

[1]In his affidavit submitted in support of the motion for summary judgment, defendant Loprieno stated that the defendants had paid the plaintiff a total of $67,199.56 for his representation (doc. 112-3, Loprieno aff. ¶ 10). After the motion was filed, the defendants discovered an additional payment from Strategic to the plaintiff dated February 26, 2010, in the amount of $12,500.00 (doc. 119-1).

the plaintiff and the defendants.  The agreement provided as follows: "Lawyer will have an ATTORNEYS EXPRESS CHARGING LIEN for fees and unpaid costs on all the property of Spartanburg until the fees and unpaid costs are paid as provided herein" (doc. 48-1, fee agreement).

On October 31, 2011, the master-in-equity dismissed the 2009 Civil Action *without prejudice*, citing the plaintiff's failure to respond to counterclaims and his failure to join Strategic as a necessary party[2] (doc. 96-5, dismissal order).  The defendants contend that the plaintiff made matters worse by failing to file a timely Rule 59(e) motion addressing the alleged errors in the order of dismissal, which meant that the plaintiff's  assignments of error were not properly preserved for appellate review (doc. 112-6, motion to alter or amend (only requesting clarification that the dismissal was granted without prejudice)).

On November 8, 2011, soon after the 2009 Civil Action was dismissed, the plaintiff filed a nearly identical[3] action (the "2011 Civil Action") on behalf of LOP and Strategic (C.A. No. 2011-CP-42-4876).  The 2011 Civil Action was removed to federal court on December 6, 2011 (C.A. No. 7:11-3312-JMC).   The plaintiff also represented the defendants in a companion case filed against them in federal court  by Capital Investment Funding, LLC and Cosimo, LLC contemporaneously with the removal of the 2011 Civil Action (C.A. No. 6:11-3321-MGL).   That case was voluntarily dismissed by Capital Investment Funding, LLC and Cosimo, LLC on July 30, 2013, pursuant to a settlement of all litigation reached with the defendants.

On January 23, 2012, the plaintiff filed an appeal of the 2009 Civil Action to the South Carolina Court of Appeals, claiming that the master-in-equity erred in dismissing the case.

---

[2]LOP had conveyed a portion of its interest in the security instrument underlying the case to Strategic (doc. 96-5, dismissal order at 2; doc. 96-2, Loprieno aff. ¶ 3).

[3]The 2011 Civil Action differed only in that it included a fifth cause of action for fraud (doc. 89, pl. m.s.j. at 2).

On March 8, 2012, the Greenville County Court of Common Pleas dismissed both the legal malpractice and the breach of fiduciary duty claims in the Pfeiffer Matter based on the plaintiff's failure to submit the statutorily required affidavit of merit along with the complaint (doc. 112-9, dismissal order). *See* S.C. Code Ann. § 15-36-100.

The plaintiff filed a motion to remand the 2011 Civil Action to state court, which was granted on June 27, 2012.  According to the defendants, in July 2012, they terminated the plaintiff as counsel in the 2011 Civil Action.  On July 20, 2012, the plaintiff filed a motion for attorney fees, costs, and expenses as attorney for LOP and Strategic in the federal case.  The Honorable J. Michelle Childs, United States District Judge, granted the motion in part on May 7, 2013, awarding fees directly related to LOP and Strategic's efforts to have the matter remanded to state court in the amount of $11,812.50 in attorney's fees and $110.00 in administrative fees (C.A. No. 7:11-3312-JMC, doc. 44).

On July 26, 2012, the plaintiff filed in the Spartanburg County Court of Common Pleas a "Notice of Attorney's Charging Lien" purporting to encumber the proceeds of any settlement or judgment that might subsequently be obtained by the defendants in the 2009 and 2011 Civil Actions (doc. 112-10, notice of attorney's charging lien).

On December 17, 2012, the plaintiff filed the instant action against the defendants in state court, and it was removed to federal court by the defendants on January 15, 2013, based upon diversity jurisdiction.  In his second amended complaint, which was filed on September 3, 2013, the plaintiff alleges claims for breach of written contract, breach of oral contract, fraud, fraudulent misrepresentation and conspiracy to commit fraud, and *quantum meruit* (doc. 48, 2nd amended comp.).  He alleges that the defendants owe him $272,431.31 in attorney's fees and costs (*id.* at 11; doc. 48-8, summary of attorney's costs and services rendered).

The South Carolina Court of Appeals dismissed the appeal of the 2009 Civil Action on June 19, 2013, based on the opposing party's argument that the plaintiff's decision to file the 2011 Civil Action rendered the appeal moot (doc. 89-7, dismissal order).

4

On July 26, 2013, the defendants entered into a confidential global settlement agreement with opposing parties as to all matters pending in the various courts.

On August 30, 2013, the plaintiff filed a motion, styled as arising under Federal Rule of Civil Procedure 60(b), in the federal case that had been closed when the 2011 Civil Action was remanded to state court (C.A. No. 7:11-3312-JMC). In the motion, the plaintiff noted that he had been told by his clients, LOP and Strategic, that they had entered into a confidential settlement agreement with opposing parties as to all matters pending in the various courts, which included a waiver of the court's May 7, 2013, order partially granting the motion for attorney fees and dismissal of the plaintiff's attorney's charging lien. The plaintiff alleged that LOP and Strategic "acted fraudulently" by entering into the settlement agreement. He asked that the court enter a declaratory judgment that his rights were violated and reopen the federal case to compel the parties to pay him the attorney fees and costs awarded in the May 7, 2013, order (C.A. No. 7:11-3312-JMC, doc. 47; *see also* doc. 53, amended motion). Judge Childs denied the motion on April 18, 2014 (C.A. No. 7:11-3312-JMC, doc. 63).

On October 14, 2013, the defendants filed their answer to the plaintiff's second amended complaint in the instant case, alleging counterclaims against the plaintiff for legal malpractice, breach of contract, intentional interference with prospective contractual relations, tortious interference with existing contractual relations, and unjust enrichment (doc. 73). On April 2, 2014, the undersigned issued a report recommending that the plaintiff's motion for partial summary judgment (doc. 89) on the defendants' counterclaims be denied (doc. 116). That recommendation is currently pending before the Honorable Bruce H. Hendricks, United States District Judge.

On March 21, 2014, the defendants filed the instant motion for summary judgment as to the plaintiff's third and fourth causes of action in the second amended complaint (doc. 112). The plaintiff filed a response in opposition on April 1, 2014 (doc. 114), and the defendants filed a reply on April 11, 2014 (doc. 119).

## APPLICABLE LAW AND ANALYSIS

The defendants have moved for summary judgment on the plaintiff's third cause of action (fraud) and fourth cause of action (fraudulent misrepresentation and conspiracy to commit fraud). Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the party's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

***Fraud***

In the second amended complaint, the plaintiff alleges the following facts in support of his cause of action for fraud:

30. From the date of the last payment made by Defendants in October 2011 until the present, Plaintiff has continuously requested payment.

31. All Defendants including LOP Capital, LLC, Strategic Lending Solutions, LLC, Michael Loprieno, and Brian Knight have acted fraudulently in the failure to pay Attorney's fees and costs to Plaintiff. All Defendants are financially responsible for the Attorney's fees and cost incurred during Plaintiff's representation of Defendants.

32. Defendants made a false statement of a material fact: Defendant notified Plaintiff that Defendant had the intent to pay Plaintiff attorney's fees and cost based on Plaintiff's services. Defendant promised payment on many occasions, even notifying Plaintiff that payment had been sent, yet Plaintiff never received payment.

33. Defendants had knowledge that the statement was untrue: Plaintiff continually requested payment of both costs and attorney fees that had already been incurred by Plaintiff in order to continue to proceed with the numerous actions including the Appeal of the Master-in-Equity case, which had already been filed. Plaintiff advised Defendant that the costs were going to be significant because of the necessity of making approximately eighteen copies of the Record on Appeal, which consisted of approximately 1000 pages each during numerous conversations with Defendant. Defendant assured Plaintiff that the payment for costs would be sent by overnight mail, which was never sent or intended to be sent by Defendant. Defendants were aware of the time constraints, imposed by the Court Rules, as to the filing of the Record on Appeal. Both the written and oral agreements by the parties was that costs were to be the responsibility of the Defendants. The costs incurred were reasonable and necessary and were itemized to the Defendants. The Defendants challenged the reasonableness of the costs on the record on appeal and Plaintiff provided the Defendants with two bids from other sources, which were higher than that incurred by Plaintiff. After receiving proof of the reasonableness of the costs, Defendants never sent the costs, which they were obligated to pay.

34. Defendants had the intent to deceive Plaintiff: Defendants used this ruse in order not to pay the costs and by representing that it would send those costs by overnight mail inducing Plaintiff to continue to provide the services necessary for the appeal.

35. Plaintiff justifiably relied on the fraudulent statements: Defendants action, in promising to pay fees and costs, was done to induce Plaintiff to continue with his representation, which Plaintiff did.

36. Defendant's actions are consistent and represent a continuing pattern of behavior reflected in the manner in which Defendants dealt with other counsel hired by Defendants subsequent to Plaintiff's withdrawal. This reference is to the withdrawal of Counsel Peter Protopapas for failure of Defendants in the case at bar to pay the agreed upon attorney fees.

37. This pattern of behavior constitutes actionable fraud, which Plaintiff based upon these various promises to pay. These communications took place throughout the course of the Federal litigation, which began in 2011 and continued on a regular basis until May 2013. Defendant's purpose of making and breaking promises to pay was purposeful, and a part of a pattern with several other counsel i.e. Todd Darwin, Peter Protopapas, and others. Defendants utilized this pattern of deceit and fraud in order to obtain the benefits of continued representation without any intent to pay for that representation.

38. Plaintiff informed Defendants, through their counsel, that there would be a charge of $2,500.00 for services prior to oral arguments that would include travel, preparation and oral argument in the Court of Appeals in February 2013. That sum was never paid. Defendants knew that Plaintiff was committed to appear in the Court of Appeals and relied upon that fact and did not pay that costs [sic].

39. Defendants had no intention of paying and Plaintiff relied upon those promises to his detriment.

40. Plaintiff has been injured as a result: due to Defendants' fraudulent conduct, Plaintiff has been damaged in excess of one hundred forty one thousand, seven hundred and sixty-five

dollars and fifty-two cents[4] ($272,431.32), excluding interest and attorney's fees in prosecuting this action. A true and correct copy of the Summary of Attorney's Cost and Services Rendered are attached and incorporated by reference as Exhibit H.

41. During the course of the various litigations, from 2009 through 2012, Defendants generated in excess of approximately 400 faxes addressed to Plaintiff and requiring action or response by Plaintiff. Many of these faxes were multiple pages and included documents which needed to be reviewed. The total time incurred by Plaintiff, at his hourly rate, was in excess of $46,666.

42. During the course of the two litigations before the Master-In-Equity, the two federal cases the Plaintiff was handling, the Pfeiffer case and the matter in the Court of Appeals, Plaintiff had numerous telephone conversations with the Defendants regarding these matters. During these four years (2009-2012) Plaintiff's telephone communications with Defendants averaged in excess of one hour per week.

43. The total charges for the fax and phone component as set forth above which represents additional services in those set forth in the complaint and first amended complaint is $130,666. The total damages sustained by Plaintiff is $272,431.32. A true and correct copy of the Summary of Attorney's Cost and Services Rendered are attached and incorporated by reference as Exhibit H.

(Doc. 48, 2nd amended comp. ¶¶ 30-43).

The defendants argue that the plaintiff has failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b) and has failed to establish the elements of a common law fraud claim. The undersigned agrees.

Rule 9(b) provides in pertinent part, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b)'s particularity requirement is generally understood to impose four conditions.

---

[4] In the first amended complaint, the plaintiff alleged damages "in excess of . . . $141,765.52 . . . " (doc. 17, 1st amended comp. ¶ 38). The plaintiff now alleges damages in excess of $272,431.32, but mistakenly did not change the amount in its written form in the second amended complaint (doc. 48, 2nd amended comp. ¶ 40) nor in his response in opposition to the motion for summary judgment (doc. 114, pl. resp. m.s.j. at 6).

"According to two noted scholars, the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)). As argued by the defendants, the plaintiff has failed to specify either the time or the place of the allegedly fraudulent acts. The closest the plaintiff comes to mentioning a date or instance of alleged fraud is his assertion in paragraph 37 of the second amended complaint that the defendants made "various promises to pay" beginning "in 2011 and continu[ing] on a regular basis until May 2013" (doc. 48, 2nd amended comp. ¶ 37). In his response to the motion for summary judgment, the plaintiff states an even broader period of time: "Defendant promised payment on many occasions from 2009 to 2012, even notifying Plaintiff that payment had been sent, yet Plaintiff never received payment" (doc. 114, pl. resp. m.s.j. at 5).

Likewise, the plaintiff has failed to describe with any particularity the content of the conduct alleged to constitute fraud. In sum, the plaintiff alleges: one or more of the defendants on one or more occasions knowingly misled the plaintiff about their intent to pay him, including one time when one or more of the defendants told the plaintiff that a check was in the mail when it was not in the mail.

Finally, the plaintiff has failed to identify the person or persons whose conduct gave rise to the claim of fraud. Throughout the factual allegations made in support of the fraud claim, the plaintiff variously refers to "Defendant" and "Defendants" making false promises to pay (*see* doc. 48, 2nd amended comp. ¶¶ 32-38). However, "'[a]n officer, director, or controlling person in a corporation is not, merely as a result of his or her status as such, personally liable for the torts of the corporation. To incur liability, the officer, director, or controlling person must ordinarily be shown to have in some way participated in or directed the tortious act.'" *Moseley*, 694 S.E.2d at 47 (quoting *Rowe v. Hyatt*, 468 S.E.2d 649, 650 (S.C. 1996)). The plaintiff has failed to allege with specificity and has

10

failed to come forward with any proof of "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784 (citation omitted).  Based upon the foregoing, the plaintiff has failed to allege fraud with the particularity required by Rule 9(b). Accordingly, the claim should be dismissed. *See U.S. ex rel. Goldstein v. Fabricare Draperies, Inc.*, 84 F. App'x 341, 344-45 (4th Cir. 2004) (affirming district court's dismissal of fraud claim pursuant to Rule 9(b)).

Alternatively, the defendants argue that the plaintiff's third cause of action fails to satisfy the required substantive elements of fraud.  This court agrees.  To prevail on a cause of action for fraud in South Carolina:

> [A] [p]laintiff must prove by clear, cogent, and convincing evidence [all of] the following elements: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Moseley v. All Things Possible, Inc.*, 694 S.E.2d 43, 45 (S.C. Ct. App. 2010) (citation omitted).  "To withstand a motion for summary judgment, a plaintiff must provide clear and convincing evidence in support of a claim alleging fraudulent conduct." *Anthony v. Atlantic Group, Inc.*, 909 F.Supp.2d 455, 475 (D.S.C. 2012) (citation omitted).

The plaintiff argues in his response to the motion for summary judgment that "Defendant notified Plaintiff that Defendant had the intent to pay Plaintiff's attorney's fees and cost based on Plaintiff's services.  Defendant promised payment on many occasions from 2009 to 2012, even notifying Plaintiff that payment had been sent, yet Plaintiff never received payment" (doc. 114, pl. resp. m.s.j. at 4-5).  The plaintiff further argues:

> Plaintiff continually requested payment of both costs and attorney fees that had already been incurred by Plaintiff in order to continue to precede [sic] with the numerous actions including the Appeal of the Master-in-Equity case, which had already been filed. Plaintiff advised Defendant that the costs were going to be significant because of the necessity of making

11

approximately eighteen copes of the Record on Appeal, which consisted of approximately 1000 pages each during numerous conversations with Defendant. Defendant assured Plaintiff that the payment for costs would be sent by overnight mail, which was never sent or intended to be sent by Defendants. Defendants were aware of the time constraints, imposed by the Court Rules, as to the filing of the Record on Appeal. Both the written and oral agreements by the parties was that costs were to be the responsibility of the Defendants. The costs incurred were reasonable and necessary and were itemized to the Defendants. The Defendants challenged the reasonableness of the costs on the record on appeal and Plaintiff provided the Defendants with two bids from other sources, which were higher than that incurred by Plaintiff. After receiving proof of the reasonableness of the costs, Defendants never sent the costs, which they were obligated to pay.

(*Id.*). As a result, the plaintiff claims he has been damaged in excess of $272,431.32 (*Id.* at 6). In support of his arguments, the plaintiff submitted the following: his second amended complaint (doc. 114-1); a copy of the defendants' admission that they have not made any additional payments to the plaintiff subsequent to being awarded attorney's fees in C.A. No. 7:11-3312-JMC (doc. 114-2); unexecuted, unfiled attorney's charging liens relating to the cases the defendants settled after the plaintiff's exit as counsel (doc. 114-3); and a copy of Judge Childs' order awarding attorney's fees to the defendants in C.A. No. 7:11-3312-JMC (doc. 114-4).

Here, the "false statements of fact" upon which the plaintiff relies to establish his claim of fraud are: (1) generalized statements of intent to pay fees and costs on one or more occasions during the course of the plaintiff's representation of the defendants, and (2) an allegation that on some unspecified occasion the plaintiff was told a check for appeal-related costs was in the mail.

As argued by the defendants, the plaintiff has failed to show the "materiality" of the alleged false statements. "A fact is material when the knowledge or ignorance of it will materially influence the judgment" of the plaintiff so as to alter his course of action. *Suggs v. New York Life Ins. Co.*, 176 S.E. 457, 461 (S.C. 1934) (Bonham, J., dissenting) (quoting 32 C.J. § 486, p. 1271). The plaintiff testified during his deposition that he would

have proceeded with the appeal of the 2009 Civil Action regardless of the defendants' actions:

> Q. Were the reasons that you gave for saying that the -- you were obligated to handle the appeal in this e-mail were your true reasons at the time that you gave them to the clients?
>
> A. What difference would it make? I finished the appeal.
>
> Q. That wasn't my question. My question was the reason -- okay. Let me preface this by saying the reason that you give your clients in this e-mail for saying that you were going to be handling the appeal is because you were acknowledging -- to use your word -- that your retainer agreement –
>
> A. Did not exclude appeals.
>
> Q. -- and therefore that these services are covered by that retainer agreement. Did you write that or did you not write that, sir?
>
> A. I did.
>
> Q. So were you wrong then?
>
> A. Yes, actually, I was.
>
> . . .
>
> A. But I still would . . . I still would have continued the representation on the appeal because I think I was obligated to under the – . . . not the retainer agreement . .. not the retainer agreement.
>
> . . .
>
> A. I felt as to the appeal I was stuck and there was -- I had a -- a no -- I was on the horns of a dilemma. My dilemma was I know these people are going to try and find a way to screw me out of my fees and my costs and so I had that on one hand and that would give me grounds for withdrawal but on the other hand I had an ongoing appeal that I felt I had an obligation under the Rules of Professional Conduct to conclude.

(Doc. 112-1, Chase dep. 290-91; doc. 112-2, Chase dep. 296).

Moreover, the plaintiff has produced no evidence that the alleged false statements by one or more of the defendants caused the damages he claims to have suffered.  In his response to the motion for summary judgment, the plaintiff simply references his second amended complaint on this issue (*see* doc. 114, pl. resp. m.s.j. at 6).  In the second amended complaint, the plaintiff alleges that he has been "injured as a result . . . due to Defendants' fraudulent conduct" in the amount of $272,431.32 (doc. 42, 2nd amended comp. ¶ 40).  However, this is merely a restatement of the plaintiff's total claim for attorney's fees and costs, and the plaintiff has made no effort to isolate damages proximately caused by the alleged misrepresentations (*see* doc. 48-8, summary of attorney's cost and services rendered).  Further, the defendants have presented evidence tending to show that they reasonably understood that the plaintiff was not owed some of the fees he now claims.  For example, according to the plaintiff's summary of damages attached to his second amended complaint, he seeks $40,000.00 in attorney's fees for his representation of the defendants in the appeal of the 2009 Civil Action (doc. 48-8).  However, in his deposition, the plaintiff was shown a copy of an email dated July 2, 2012, in which he made the following statement to the defendants:  "As to the appeal of the Master-in Equity case to the Court of Appeals, I acknowledge that since our retainer agreement on that case does not exclude appeals, that the fees for these services are covered by that retainer agreement (excluding costs)."  The plaintiff admitted that under the circumstances the defendants would reasonably have believed that they would not be charged for the appeal:

> Q. Would the -- would the clients be justified in their belief as they have both testified in their depositions that you were not charging them any additional money for the appeal based on this representation that you gave them in this [July 2, 2012] e-mail?
>
> A. That -- that –
>
> Q. Would they have been justified in believing that?

A. Yeah, but – but that was way after the fact of – of filing the appeal and they also agreed to pay the costs and they didn't so I'm relieved from that obligation because of their failure. . . .

(Doc. 112-1, Chase dep. 292; doc. 112-2, Chase dep. 293).

"'[W]here the ...clear and convincing evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant.'" *Anthony*, 909 F.Supp.2d at 475 (quoting *Anderson*, 477 U.S. at 255). Based upon the foregoing, the plaintiff has failed to present evidence sufficient to create a genuine issue of material fact on at least two of the elements of the common law fraud claim. Accordingly, summary judgment is appropriate on the third cause of action. *See Sorin Equipment Co., Inc. v. The Firm, Inc.*, 474 S.E.2d 819, 823 (S.C. Ct. App. 1996) ("Failure to prove any element of fraud is fatal to the action.").

### *Fraudulent Misrepresentation and Conspiracy to Commit Fraud*

The plaintiff alleges the following facts in support of his fourth cause of action:

46. Pursuant to an Order of June 27, 2012, the Court granted a Motion to Remand and awarded Attorney fees and costs based upon Cosimo et al. admitted erroneous removal of Case No.7:11-3312.

47. In June 2012, Plaintiff Nelson S. Chase ("Plaintiff herein") filed an Attorney's Charging Lien on any favorable judgments obtained by Defendants herein. Defendants herein as well as Cosimo et al. were served with these notices along with all attorneys of record. A true and correct copy of the Attorney's Charging Lien is attached and incorporated by reference as Exhibit I.

48. Upon information and belief, Cosimo et al. filed a separate cause of action against Defendants Michael Loprieno, Brian Knight, LOP Capital, LLC., and Strategic Lending Solutions, LLC., ("Defendants herein") making a claim under the RICO statute. This suit is factually baseless and the suit was filed solely for requiring Cosimo et al. to expend substantial amounts of money on attorney's fees and cost knowing full-well that Defendants herein were extremely resistant to the payment of attorney's fees and costs. Cosimo et al. had used tactics, which were improper and contrary to established law (Case No.

15

6:11-3321 and 7:11-3312) and they filed for bankruptcy during the Master-In-Equity suit to delay the pending case, which resulted in taking a simple foreclosure proceeding in the Master-In-Equity court and making this a complicated and expensive proceeding.

49. On July 20, 2012, Plaintiff herein submitted a Memorandum of Reasonableness and requested attorney's fees in Case No. 7:11-3312.

50. The court entered an order requiring Cosimo et al. to respond by JANUARY 7, 2013. Cosimo et al. did not comply with the Order but rather filed a response on JANUARY 11, 2013.

51. On January 21, 2013, Plaintiff herein filed a Reply to the Response to Plaintiff's Motion for Attorney's Fees and Cost.

52. On May 7, 2013, Judge Childs entered an order to pay attorney's fees and costs in the amount of $11,647.00 related solely to the services rendered by Plaintiff herein in order to dismiss Cosimo et al.'s removal action.

53. Those fees were ordered to be paid by Cosimo et al. to Defendants herein. The obtaining of that judgment resulted from Plaintiff herein having generated an affidavit of reasonableness of the fees and cost contained in the May 7th judgment.

54. AT NO TIME HAD DEFENDANTS HEREIN PAID ANY PORTION OF THE AMOUNT AWARDED FOR PLAINTIFF'S SERVICES.

55. Defendants herein were well aware that the court order awarding attorney fees and costs were for services rendered by Plaintiff herein, having nothing to do with a claim for damages in any other litigation.

56. When Plaintiff herein inquired about being paid, he was initially told that he would be paid by Defendants herein.

57. Subsequently, upon making further inquiry, Plaintiff herein was told by Counsel for Defendants herein that the Defendants herein and Cosimo et al. had entered into a confidential agreement, which included among other provisions, a waiver of the court's order from May 7, 2013[,] and Defendants herein released Cosimo et al. from the order to pay attorney's fees and costs, which were awarded by court for attorney services.

16

Defendants herein wanted desperately to end this legal quagmire, which had been created to a large extent by Cosimo et al. In order to accomplish this, Defendants herein through the aid of their counsel, Nathan Earle, entered into a global settlement with Cosimo et al. of all matters pending in the various courts.

58. Neither a draft of settlement agreement, nor notice of any kind prior to entering into that settlement was delivered to Plaintiff herein. Plaintiff herein is a party of interest and has a right to the attorney's fees and costs ordered by Hon. Michelle Childs. Defendants herein, upon information and belief, gave up their right to that settlement and therefore, Defendants herein obtained a benefit which was subject to the Attorney's Charging Lien.

59. It was also agreed that Plaintiff's Charging Lien would be dismissed without notice to Plaintiff herein of that dismissal.

60. The Attorney's Charging lien provides that Counsel may reserve payment of attorney's fees and cost on any favorable judgment ordered to Defendants herein. A true and correct copy of the Attorney's Charging Lien is attached and incorporated by reference as Exhibit I.

61. It was also agreed that all other pending cases be dismissed.

62. Plaintiff herein is mindful of his duty not to interfere with a client's right to settle; however, the manner and process of that settlement was done in a surreptitious manner and in such a way that Plaintiff herein had no notice that his rights were being affected. Plaintiff herein also did not have notice that Defendants herein was entering into an agreement in which it used money, which Plaintiff herein was entitled as a bargaining chip in making that settlement.

63. Defendants herein have created an unjust result, which the Plaintiff did not intend.

64. Plaintiff herein takes such action to correct Defendants' ability to undermine the court order.

65. Defendants' acts reflect a fraudulent activity and reveal a conspiracy to commit fraud. Plaintiff herein is prevented from exercising his equitable right to those funds. These acts of the Defendants herein were in furtherance of hiding their actions from the world and particularly from Plaintiff herein. Plaintiff

> herein relied upon that judgment and the understood goal of
> Plaintiff herein in not yet taking any action to enforce the May
> 7 order, to his detriment.

(Doc. 48, 2nd amended comp. ¶¶ 46-65).

"An 'attorney's charging lien' is an equitable right to have the fee and costs due an attorney for services rendered in a legal proceeding secured to him out of any judgment or recovery obtained therein." *Eleazer v. Hardaway Concrete Company, Inc.*, 315 S.E.2d 174, 177 (S.C. Ct. App. 1984)  (quoting 7 Am.Jur.2d Attorneys at Law § 324 at 336-37 (1980); 7A C.J.S. Attorney & Client § 359 at 713 (1980)). "While South Carolina recognizes an attorney's lien created by the common law, the lien protects only costs and disbursements; it does not cover an attorney's fee." *Id.* (citation omitted).  However, an attorney and client may create "a lien for the payment of an attorney's fee out of the proceeds of a judgment obtained as a result of an attorney's efforts . . . by an express agreement between an attorney and his client." *Id.* (citations omitted).

The defendants argue that the fraudulent misrepresentation portion of the claim should be dismissed because the evidence shows that the charging lien on which the fourth cause of action is predicated is not enforceable as a matter of South Carolina law because it purports to encumber assets that were never provided to the plaintiff (doc. 112, def. m.s.j. at 21-22, 25-26).  This court agrees.  An attorney's charging lien was part of the April 25, 2011, fee agreement between the plaintiff and the defendants.  However, that lien was unambiguously linked with the prospective sale of the Spartanburg Property that was the subject of the underlying foreclosure action – the 2009 Civil Action (doc. 48-1, fee agreement).  The charging lien[5] referenced by the plaintiff in support of this cause of action

---

[5]The plaintiff alleged in the second amended complaint that in June 2012 he filed an attorney's charging lien on any favorable judgments obtained by the defendants (doc. 48, 2nd amended comp. ¶ 47).  The charging lien attached to the second amended complaint is not signed or filed (*see* doc. 48-9, attorney's charging lien).  In support of their motion for partial summary judgment, the defendants submitted a copy of an attorney's charging lien filed by the plaintiff in the 2009 Civil Action in state court on July 26, 2012 (doc. 112-10, attorney's charging lien).  The documents are similar but are not identical.

was not created by an express agreement between the plaintiff and the defendants, and, therefore, it is unenforceable for the collection of attorney's fees. *See Eleazer*, 315 S.E.2d at 177 ("While South Carolina recognizes an attorney's lien created by the common law, the lien protects only costs and disbursements; it does not cover an attorney's fee.").

Moreover, the defendants argue that the settlement of which the plaintiff complains resulted in a net cash payment from the defendants, with the result that even if the plaintiff's lien were valid and enforceable, there was no recovery to which such a lien could attach (doc. 112, def. m.s.j. at 21-22, 25-26).  The plaintiff did not respond to this portion of the defendants' argument.

There is no dispute that the defendants were awarded attorney's fees and costs in the total amount of $11,922.50 in Civil Action No. 7:11-3312-JMC, and they were aware of both the attorney's fee award and of the plaintiff's claimed charging lien when they entered into a confidential global settlement agreement with the defendants in the underlying litigation.  There is also no dispute that the global settlement was finalized on July 26, 2013, and provided for both a cancellation of the award of attorney's fees and periodic cash payments by the defendants to the opposing party.  The plaintiff asserts that "[n]either a draft of settlement agreement, nor notice of any kind prior to entering into that settlement was delivered to Plaintiff herein" (doc. 48, 2nd amended comp. ¶ 58).  In response to the motion for summary judgment, he argues, "Defendants' acts reflect a fraudulent activity and reveal a conspiracy to commit fraud.  Defendants participated in a settlement without informing Plaintiff, who is a real party in interest" (doc. 114, pl. resp. m.s.j. at 7).  However, the defendants have presented evidence showing that the plaintiff did have notice of the settlement.  On May 29, 2013, the plaintiff sent a letter to opposing counsel in the 2009 and 2011 Civil Actions and to the defendants' counsel in this case.  The letter stated in pertinent part: "You have indicated that you are in the process of negotiating a settlement with the defendants in the above referenced matters.  As part of that settlement, you told me that you contemplated paying the defendants money. . . .  I want to remind all counsel that I have an attorney's charging lien that has been perfected on both

19

cases" (doc. 112-11, 5/29/13 letter).  The plaintiff noted that the federal court had recently entered an order granting a motion for attorney fees for improper removal of the 2011 Civil Action.  He further stated, "The plaintiff [LOP and Strategic] should not benefit from the federal court award without satisfying my attorney charging lien.  Please make arrangements to immediately satisfy that charging lien at which point the plaintiffs [LOP and Strategic] are free to satisfy any settlement with the defendants as they choose" (*id.*).  This evidence shows that while the plaintiff may not have liked the fact that the defendants were settling their cases, he was clearly informed of the settlement approximately two months before it was finalized.

"To withstand a motion for summary judgment, a plaintiff must provide clear and convincing evidence in support of a claim alleging fraudulent conduct." *Anthony*, 909 F.Supp.2d at 475 (citation omitted).  The plaintiff clearly has not met his burden here. Based upon the foregoing, summary judgment should be granted as to the fraudulent misrepresentation portion of this cause of action.

The plaintiff also alleges that the defendants' acts "reveal a conspiracy to commit fraud" (doc. 48, 2nd amended comp. ¶ 65).  "It is well-settled in South Carolina that the tort of civil conspiracy contains three elements:  (1)  a combination of two or more persons; (2)  for the purpose of injuring the plaintiff; (3)  causing plaintiff special damage." *Cowburn v. Leventis*, 619 S.E.2d 437, 453 (S.C. Ct. App. 2005)(citation omitted).  "In a civil conspiracy claim, one must plead additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 875 (S.C. Ct. App. 2009) (citation omitted).  "Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct. . . . [and] must be specifically alleged in the complaint to avoid surprise to the other party." *Id.* (citation omitted).

The defendants argue that the conspiracy component of the fourth cause of action is deficient in at least two aspects.  First, the plaintiff has acknowledged that the

20

defendants were under severe financial pressure to settle the underlying litigation, and under the circumstances, no jury could reasonably conclude that the defendants were primarily out to harm the plaintiff when they settled their case. Second, because the conspiracy claim is merely duplicative of his other causes of action for breach of contract, fraud, and quantum meruit and alleges no independent claim for damages, it should be dismissed (doc. 112, def. m.s.j. at 26).

In *Vaught v. Waites*, 387 S.E.2d 91, 95 (S.C. Ct. App. 1989), the South Carolina Court of Appeals affirmed the dismissal of a conspiracy claim that served merely as "an embellishment of [the plaintiff's] breach of contract action." The court found that under *Todd v. S.C. Farm Bureau*, 278 S.E.2d 607, 611 (S.C. 1981), when a cause of action "does no more than incorporate the prior allegations and then allege the existence of a civil conspiracy," the proper course of action is dismissal of the conspiracy claim. *Vaught*, 387 S.E.2d at 95. Applying this rationale, the court found in *Vaught* that the plaintiff's conspiracy claim added nothing to his claim for breach of contract: "The damages sought in the conspiracy cause of action are the same as those sought in the breach of contract cause of action. Because no special damages are alleged aside from the breach of contract damages, we hold the conspiracy action is barred under *Todd*." *Id.*

As argued by the defendants, the same rationale applies to the plaintiff's conspiracy claim, which is duplicative of the relief demanded in his causes of action for breach of contract, quantum meruit, and fraud. As noted above, the claim for fraud actually appears under the same heading with the plaintiff's conspiracy claim (*see* doc. 48, 2nd amended comp. at 8). The plaintiff adds nothing under the heading of "conspiracy" for which he has not already requested relief elsewhere. Based upon the foregoing, summary judgment should be granted on the civil conspiracy portion of the fourth cause of action.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the defendants' motion for partial summary judgment (doc. 112) as to the plaintiff's third and fourth causes of action should be granted.

s/ Kevin F. McDonald
United States Magistrate Judge

September 24, 2014
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).